UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAROLD LORNE STYER, JR., and
JOANN STYER,                                    CASE NO. 8:25-cv-2978
            Plaintiffs,

    v.
                                                **JURY TRIAL DEMANDED**
TEN BROECK TAMPA, LLC, d/b/a
NORTH TAMPA BEHAVORIAL
HEALTH,
ZEPHYRHILLS POLICE DEPARTMENT,
TAMPA POLICE DEPARTMENT, and
VICTORIA STEPHENS,
            Defendants.
_____

## **COMPLAINT**

COMES NOW, Plaintiffs, HAROLD LORNE STYER, JR. and JOANN STYER by and through undersigned counsel, and sues Defendants, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH, ZEPHRYILLS POLICE DEPARTMENT, TAMPA POLICE DEPARTMENT, and VICTORIA STEPHENS, and in support thereof would state:

## I.    **JURISDICTION AND VENUE**

1.    This is an action for damages that exceeds $75,000.00, exclusive of interest, costs, and attorney's fees.

2.    This court has jurisdiction over any violations of the Florida Mental Health Act of 1971, Fla. Stat. § 394.451, *et seq.*, commonly known as the "Baker

1

Act," the Adult Protective Services Act, Fla. Stat. § 415.101, *et seq.*, the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.*, (hereinafter the "FCCPA"), violations of 42 U.S.C. § 1983, along with counts for false imprisonment, and loss of consortium.

3.      Venue is proper because the events and transactions underlying the basis for this action occurred in Pasco County and Hillsborough County, Florida.

4.      Venue is properly located in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because, (1) the Defendants are located in this district, and (2) Defendants conduct business within this judicial district, and or (3) all of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this district.

## II.   <u>PARTIES</u>

5.      Harold Lorne Styer, Jr. alleges violations of the FCCPA, violations of the Florida Mental Health Act of 1971, Fla. Stat. § 394.451, *et seq.*, commonly known as the "Baker Act," the Adult Protective Services Act, Fla. Stat. § 415.101, *et seq*., and false imprisonment.

6.      Harold Lorne Styer, Jr. is a natural person and a resident of Pasco County, Florida.

7.      Harold Lorne Styer, Jr. is a Vietnam War Veteran.

8.      Harold Lorne Styer, Jr. served from 1965-1967.

2

9.    Harold Lorne Styer, Jr. was awarded two (2) Bronze Service Medals, the Good Conduct Medal, National Defense Service Medal, Good Conduct Medal, and Republic of Vietnam Campaign Medal.

10.    Harold Lorne Styer, Jr. is married to Joann Styer and has been for fifty-seven (57) years.

11.    Joann Styer is a natural person and a resident of Pasco County, Florida.

12.    Joann Styer is married to Harold Lorne Styer, Jr. and has been for fifty-seven (57) years.

13.    Joann Styer alleges the Loss of Consortium of Harold Lorne Styer, Jr. based on the intentional, negligent, and unlawful acts committed against Harold Lorne Styer, Jr.

14.    Defendant TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH (hereinafter "NTBH"), is a Florida Limited Liability Company holding itself to the public as North Tampa Behavioral Health, and is authorized to conduct, and is conducting business within the state of Florida.

15.    Defendant NTBH's corporate offices are located at 6100 Tower Circle, Suite 1000, Franklin, TN 37067.  Defendant, NTBH may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

16.     Defendant NTBH is the owner and/or tenant of the commercial property located at 29910 FL State Road-56, Wesley Chapel, FL 33543.

17.     Therein, Defendant NTBH operates a hospital known as North Tampa Behavioral Health (which is also referenced as "Facility").

18.     The subject facility is a licensed hospital pursuant to Fla. Stat. § 395.003(5)(a), and "[a]dherence to patient rights, standards of care, and examination and placement procedures provided under part I of chapter 394 shall be a condition of licensure for hospitals providing voluntary or involuntary medical or psychiatric observation, evaluation, diagnosis, or treatment."

19.     Defendant NTBH is a "Facility" as defined by Fla. Stat. § 394.455(16).

20.     Defendant ZEPHRYILLS POLICE DEPARTMENT (hereinafter "ZPD") is a local government law enforcement agency responsible for public safety within the city of Zephyrhills, Florida.

21.     Zephyrhills is municipality located in Pasco County.

22.     Defendant ZPD is a local government law enforcement agency responsible for public safety within the city of Zephyrhills, Florida.

23.     TAMPA POLICE DEPARTMENT (hereinafter "TPD") is a local government law enforcement agency responsible for public safety within the city of Tampa.

24.     Tampa is a municipality located in Hillsborough County.

4

25.     Defendant VICTORIA STEPHENS ("Officer Stephens") is a natural person and was at all times material employed as a sworn police officer with the ZPD.

26.     The Court has jurisdiction over the subject of, and the parties to this action because the events giving rise to the claims herein arose in Pasco County, Florida and Hillsborough County, Florida.

### III.   STATEMENT OF FACTS

27.     The Baker Act allows for the involuntary institutionalization and examination of an individual.[1]

28.     Harold Lorne Styer, Jr. was diagnosed with dementia in 2022 and did not suffer from a mental illness.

29.     On October 31, 2023, Harold Lorne Styer, Jr. and Joann Styer traveled from Pasco County, Florida to Hillsborough County, Florida for Joann Styer to attend a medical appointment.

30.     Harold Lorne Styer, Jr. without notice to Joann Styer left the medical office that his wife's appointment was at in the couple's vehicle.

---

[1] Fla. Stat. § 394.467(1) states: "There is substantial likelihood that in the near future he or she will inflict serious bodily harm on himself or herself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm".

31.    Joann Styer became worried about Harold Lorne Styer, Jr.'s cognitive ability to care for himself due to his diagnosed dementia and called law enforcement to help her locate Harold Lorne Styer, Jr.

32.    Joann Styer alerted law enforcement that Harold Lorne Styer, Jr. was diagnosed with and suffering the effects of dementia.

33.    Joann Styer was able to get in contact with Harold Lorne Styer, Jr.

34.    Joann Styer placed Harold Lorne Styer, Jr., on speaker phone in the presence of a law enforcement officer.

35.    Harold Lorne Styer, Jr. was lost and confused and was unable to give his exact location or why he was there.

36.    Harold Lorne Styer, Jr. became frustrated and said "You're lucky I'm just not committing suicide. How's that?"

37.    Joann Styer explained to law enforcement with the Tampa Police Department that Harold Lorne Styer, Jr. was suffering from dementia and had made insincere statements like this in the past but had not acted on them.

38.    Harold Lorne Styer, Jr. was located by The City of Zephyrhills Police Department.

39.    Joann Styer reiterated Harold Lorne Styer, Jr.'s diagnosis of dementia.

40.    Samantha Cerra, a law enforcement officer from the City of Tampa relayed to Defendant Officer Stephens, a law enforcement Officer, from the City Of

6

Zephyrhills that "[Joann Styer]'s like he's made comments like this several times in the last year or two and he never does anything. But it's more he gets angry and he's disoriented because he's got beginning stages of dementia."

41.    Officer Cerra wrote in her police report that she advised Defendant Officer Stephens that she heard Harold Lorne Styer, Jr. state to Joann Styer that Harold Lorne Styer, Jr. "would just kill himself."

42.    Officer Cerra either intentionally or negligently misstated Harold Lorne Styer, Jr.'s comments.

43.    Defendant Officer Stephens and another responding officer made contact with Harold Lorne Styer, Jr. and asked him three (3) times if Harold Lorne Styer, Jr. had made comments that he would hurt himself on that day.

44.    Harold Lorne Styer, Jr. stated three times he did not.

45.    Officer Stephens's Sergeant responded to the scene and evaluated Harold Lorne Styer, Jr. for roughly ten (10) minutes.

46.    The Seargent indicated that he did not believe that Harold Lorne Styer, Jr. posed a risk and stated, "He's not really criteria like that."

47.    Officer Cerra then called Defendant Officer Stephens and her that Joann Styer was on her way to pick Harold Lorne Styer, Jr. up.

48.    Defendant Officer Stephens told Officer Cerra that the Officers from Zephyrhills were going to release Harold Lorne Styer, Jr. to Joann Styer.

49.     Officer Cerra then recommended that Zephyrhills Police Department initiate an involuntary examination of Harold Lorne Styer, Jr.

50.     Defendant Officer Stephens provided that recommendation to her Seargent and reiterated that Officer Cerra heard Harold Lorne Styer, Jr. state to Joann Styer that he was going to kill himself.

51.     Defendant Officer Stephens and her Seargent then decided to follow the recommendation of Officer Cerra instead of relying on their own observations and evaluation of Harold Lorne Styer, Jr.

52.     The City of Zephyrhills Police Department in coordination with TAMPA POLICE DEPARTMENT initiated an involuntary examination of Harold Lorne Styer, Jr. under Fla. Stat. § 394.455.

53.     Defendant Officer Stephens stated in the Report of Law Enforcement Initiating Involuntary Examination CF-MH 3052A, JUN 2016 (Mandatory Form) ("CF-MH 3052A"; *See* Exhibit A) that Harold Lorne Styer, Jr. was suffering from mental illness.

54.     Zephyrhills Hills Police Department used an outdated form CF-MH 3052A to initiate the Baker Act.  That form stated:

> "Mental illness" means an impairment of the mental or emotional processes that exercise conscious control of one's actions or of the ability to perceive or understand reality, which impairment substantially interferes with the person's ability to meet the ordinary demands of living.  For the purposes of this part, the term does not include a developmental disability as defined in

chapter 303, intoxication, or conditions manifested only by antisocial behavior or substance abuse impairment.

55. The definition of "mental illness" was updated in 2020 to exclude ". . . conditions manifested only by <u>dementia, traumatic brain injury</u>, . . ." Fla. Stat. § 394.455(29), s. 4, ch. 2020-39.

56. The form that was applicable under Fla. Stat. § 394.455 (2023), was Report of Law Enforcement Initiating Involuntary Examination CF-MH 3052A, (July 2023).

57. The form that was required to be utilized states:

"Mental illness" means an impairment of the mental or emotional processes that exercise conscious control of one's actions or of the ability to perceive or understand reality, which impairment substantially interferes with the person's ability to meet the ordinary demands of living. For the purposes of this part, the term does not include a developmental disability as defined in chapter 303, intoxication, or conditions manifested only by dementia traumatic brain injury, antisocial behavior or substance abuse impairment.

58. The correct form in place at the time of Harold Styer's Baker Act excluded dementia as a mental illness under the Baker Act.

59. Law enforcement indicated that because of mental illness Harold Lorne Styer, Jr.:

a. ". . . has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; AND/OR"

b.    ". . . is unable to determine for himself/herself whether examination is necessary; AND"

c.    "Without care or treatment said person is likely to suffer from neglect or refuse to care for himself/herself, and such neglect or refusal poses a real and present threat of substantial harm to his/her wellbeing, and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provisions of other services; AND/OR,

d.    "There is a substantial likelihood that without care or treatment the person will cause serious bodily harm self in the near future, as evidenced by recent behavior."

e.    Defendant Officer Stephens indicated that Harold Lorne Styer, Jr. disappeared from [Joann Styer's] doctor's appointment around 1:00 p.m. on October 31, 2023.  Joann Styer was unable to locate Harold Lorne Styer, Jr.  Joann Styer contacted Tampa Police Department.  "While in the presence of Officer Cerra [Harold] told his wife he would just kill him.  [Joann Styer] was located in the City of Zephyrhills and placed under a baker (sic.) Act." "His wife is aware of his statement to kill himself.  He has made statements like this before."

60.    Harold Lorne Styer, Jr. was "Baker Acted" on October 31, 2023, at 6:19 p.m. pursuant to Fla. Stat. § 394.463(1)(2023).

61.    At the time, Harold Lorne Styer, Jr. was "Baker Acted", he did not meet the criteria set forth in Fla. Stat. § 394.463(1) and was suffering from dementia.

62.    The diagnosis of dementia was made known to law enforcement officers with the Tampa Police Department.

63.    The diagnosis of dementia was made known to law enforcement officers with the Zephyrhills Police Department.

64.    Harold Lorne Styer, Jr. arrived at Defendant NTBH's Facility on October 31, 2023, at 6:19 p.m.

65.    Joann Styer alerted the admissions staff of Harold Lorne Styer, Jr.'s' previously diagnosed cognitive disorder of dementia.

66.    Joann Styer alerted the admissions staff of Harold Lorne Styer, Jr.'s treatment providers.

67.    Joann Styer alerted the admissions staff of Defendant NTBH's Facility that the Plaintiff had granted her power of attorney.

68.    Joann Styer was told by the unnamed admissions staff member that she understood and that Defendant NTBH's Facility still keeps those diagnosed with dementia for seventy-two (72) hours anyway.

69.    On November 2, 2023, at 13:50 p.m. Harold Lorne Styer, Jr. was examined by Defendant NTBH's agent Syed Naqar Hasan, MD who claimed that Harold Lorne Styer, Jr. refused voluntary placement for treatment after sufficient

after conscientious explanation and disclosure of the purpose of placement for treatment and he was unable to determine for himself whether placement was necessary and there was a substantial likelihood that in the near future he would inflict serious bodily harm to himself for another person as evidenced by recent behavior causing, attempting, or threatening such harm.  ("First Opinion").

70.    Dr. Hasan stated that Harold Lorne Styer, Jr. was confused and disoriented due to a cognitive impairment and was unable to appreciate his condition, [illegible] and self-harm statements.

71.    Dr. Hasan did not list any alternative less restrictive environments that would offer for improvement of Harold Lorne Styer, Jr.'s conditions as required on the form.

72.    Dr. Daniel Stehli, MD, Defendant NTBH's agent, provided a second opinion stating that Harold Lorne Styer, Jr. met set forth in Fla. Stat. § 394.463(1) because he was "cognitively impaired, unable to care for himself." ("Second Opinion")

73.    On or about November 2, 2023, Harold Lorne Styer, Jr. through his attorney ("Law Firm") notified North Tampa Behavioral Health that he intended to exercise his rights to meet with his attorney under Fla. Stat. § 394.459(5) and § 394.467(4)

74.    In that letter of representation ("LOR"), Harold Lorne Styer, Jr.'s attorney advised of Harold Lorne Styer, Jr.'s cognitive disorder of dementia.

75.    Harold Lorne Styer, Jr.'s' attorney further advised that Harold Lorne Styer, Jr. did not meet the criteria for involuntary placement and stated the following:

76.    Harold Lorne Styer, Jr.'s attorney again requested discharge stating "My Client is requesting that he be released as he does not meet the criteria for an involuntary examination under Fla. 394.463(1).  In that statute an individual may be "taken to a treatment center if there is reason to believe that the person has a **mental illness** . . ."  A **mental illness** in this statute is defined as:

> an impairment of the mental or emotional processes that exercise conscious control of one's actions or of the ability to perceive or understand reality, which impairment substantially interferes with the person's ability to meet the ordinary demands of living. For the purposes of this part, **the term does not include** a developmental disability as defined in chapter 393, intoxication, or conditions manifested only by **dementia**, traumatic brain injury, antisocial behavior, or substance abuse.

> Fla. Stat. § 394.455(28).

77.    Harold Lorne Styer, Jr.'s attorney additionally sent another electronic mail with another statement advising that the above listed individuals as follows:

> I referenced this in my letter of representation and wanted to restate it through email, this patient has been diagnosed with dementia.  Therefore, he does not meet the criteria for a Baker Act by Florida Statute.  The applicable statutes state the following:

13

"taken to a treatment center if there is reason to believe that the person has a **mental illness** . . ."  A **mental illness** in this statute is defined as:
an impairment of the mental or emotional processes that exercise conscious control of one's actions or of the ability to perceive or understand reality, which impairment substantially interferes with the person's ability to meet the ordinary demands of living. For the purposes of this part, **the term does not include** a developmental disability as defined in chapter 393, intoxication, or conditions manifested only by **dementia**, traumatic brain injury, antisocial behavior, or substance abuse.

Fla. Stat. § 394.455(28).

78.    On November 2, 2023, Harold Lorne Styer, Jr. through his attorney requested that Defendant NTBH reach out to Joann Styer, who has power attorney for the Harold Lorne Styer, Jr. and as of the drafting of his Petition for Writ of Habeas Corpus Defendant NTBH had not communicated further with Joann Styer regarding his condition and current diagnosis.

79.    In addition to the request that Harold Lorne Styer, Jr. be afforded the right for express and informed patient consent, Harold Lorne Styer, Jr.'s attorney provided Defendant NTBH with contact information of his treating physician and psychiatric care provider.

80.    Defendant NTBH did not contact Joann Styer in order to discuss his treatment plan, or proposed treatment plans other than to request the patient be admitted voluntarily and to request that she deliver the prescription medications that the patient was already taking.

81.     On November 3, 2023, Harold Lorne Styer, Jr.'s attorney filed a *Petition for Writ of Habeas Corpus* alleging that Harold Lorne Styer, Jr. was being held under an unlawful Baker Act and other violations of Harold Lorne Styer, Jr.'s patient rights by Defendant NTBH.

82.     Harold Lorne Styer, Jr. was released without explanation after the filing and service of the *writ of habeas corpus*.

83.     By releasing patients such as Harold Lorne Styer, Jr. right before a hearing, Defendant avoids the scrutiny of the courts when they hold people that either never met the criteria set forth in Fla. Stat. § 394.463(1), or no longer meet the criteria for involuntary inpatient placement and have not been discharged pursuant to Fla. Stat. § 394.469(1).

84.     Defendant NTBH detained Harold Lorne Styer, Jr. involuntarily under the color of authority in the Baker Act, while failing to comply with the Baker Act's provisions when Plaintiff did not meet the criteria set forth in Fla. Stat. § 394.463(1), or no longer met the criteria for involuntary inpatient placement and was not discharged pursuant to Fla. Stat. § 394.469(1). *See Everett v. Florida Institute of Technology*, 503 So.2d 1382, 1383 (Fla. 5th DCA 1987) ("Here, Everett's allegations that she was involuntarily held for eight days without compliance with the Baker Act provisions, adequately allege the tort of false imprisonment.").

85.    At all times material, Officer Stephens was acting within the course and scope of her employment with ZPD.

86.    At all times material, Officer Cerra was acting within the course and scope of her employment with TPD.

87.    At all times material, Defendant NTBH acted through its employees and agents.

88.    As a result of Defendants' illegal conduct, Plaintiffs have suffered damages, including but not limited to, extreme pain and suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, expense of hospitalization, medical care, and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing, and Plaintiffs, will suffer losses in the future.  Some or all of the injuries sustained are permanent within a reasonable degree of medical probability.

89.    All conditions precedent to this action have occurred or have been waived.

90.    Plaintiffs have retained the services of the undersigned attorneys and is required to pay a reasonable fee for their services.

## IV.    CLAIMS FOR RELIEF

### COUNT I – FALSE IMPRISONMENT
### TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH.

91.     Harold Lorne Styer, Jr. was kept unlawfully in excess of the 24 hours provided for in Fla. Stat. § 394.4625(2)(a)2 after he requested Defendant NTBH for discharge.

92.     Defendant NTBH blocked Harold Lorne Styer, Jr.'s departure so that he could not leave the Facility.

93.     Harold Lorne Styer, Jr. had not committed a crime.

94.     Harold Lorne Styer, Jr. was not suspected of having committed a crime.

95.     Harold Lorne Styer, Jr. did not rescind his requests for discharge.

96.     Defendant NTBH caused Harold Lorne Styer, Jr. to be restrained against his will.

97.     Defendant NTBH acted without legal authority in restraining Harold Lorne Styer, Jr. against his will.

98.     Harold Lorne Styer, Jr.'s restraint was unreasonable and unwarranted under the circumstances.

99.    Harold Lorne Styer, Jr. suffered damages, including but not limited to, mental anguish, humiliation, emotional pain and suffering, past and future medical and psychiatric care, loss of reputation, and such other damages as allowed by Florida law due to Plaintiff's false imprisonment.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH as follows:

(a)    award Harold Lorne Styer, Jr. damages;
(b)    award Harold Lorne Styer, Jr. punitive damages
(c)    award Harold Lorne Styer, Jr. costs of this action; and
(d)    all other relief which this Court deems just and proper.

## COUNT II – VIOLATION OF RIGHTS OF PATIENTS, Fla. Stat. § 394.459 TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH.

100.    Pursuant to Fla. Stat. § 394.459(10):

Any person who violates or abuses any rights or privileges of patients provided by this part is liable for damages as determined by law. Any person who acts in good faith in compliance with the provisions of this part is immune from civil or criminal liability for his or her actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility. However, this section does not relieve any person from liability if such person commits negligence.

18

101. Pursuant to Fla. Stat. § 394.459(1), Harold Lorne Styer, Jr. had a right to individual dignity:

It is the policy of this state that the individual dignity of the patient shall be respected at all times and upon all occasions, including any occasion when the patient is taken into custody, held, or transported. Procedures, facilities, vehicles, and restraining devices utilized for criminals or those accused of crime shall not be used in connection with persons who have a mental illness, except for the protection of the patient or others. Persons who have a mental illness but who are not charged with a criminal offense shall not be detained or incarcerated in the jails of this state. A person who is receiving treatment for mental illness shall not be deprived of any constitutional rights. However, if such a person is adjudicated incapacitated, his or her rights may be limited to the same extent the rights of any incapacitated person are limited by law.

102. Pursuant to Fla. Stat. § 394.459(3), Harold Lorne Styer, Jr. had a right to express and informed consent:

(a)1. Each patient entering treatment shall be asked to give express and informed consent for admission or treatment. If the patient has been adjudicated incapacitated or found to be incompetent to consent to treatment, express and informed consent to treatment shall be sought instead from the patient's guardian or guardian advocate. If the patient is a minor, express and informed consent for admission or treatment shall also be requested from the patient's guardian. Express and informed consent for admission or treatment of a patient under 18 years of age shall be required from the patient's guardian, unless the minor is seeking outpatient crisis intervention services under s. 394.4784. Express and informed consent for admission or treatment given by a patient who is under 18 years of age shall not be a condition of admission when the patient's guardian gives express and informed consent for the patient's admission pursuant to s. 394.463 or s. 394.467. 2. Before giving express and informed consent, the following information shall be provided and explained in plain language to the patient, or to the patient's guardian if the patient is 18 years of age or older and has been adjudicated incapacitated, or to the patient's

guardian advocate if the patient has been found to be incompetent to consent to treatment, or to both the patient and the guardian if the patient is a minor: the reason for admission or treatment; the proposed treatment; the purpose of the treatment to be provided; the common risks, benefits, and side effects thereof; the specific dosage range for the medication, when applicable; alternative treatment modalities; the approximate length of care; the potential effects of stopping treatment; how treatment will be monitored; and that any consent given for treatment may be revoked orally or in writing before or during the treatment period by the patient or by a person who is legally authorized to make health care decisions on behalf of the patient.

103.   Fla. Stat. § 394.455(15) defines express and informed consent as:

"consent voluntarily given in writing, by a competent person, after sufficient explanation and disclosure of the subject matter involved to enable the person to make a knowing and willful decision without **any** element of force, fraud, deceit, duress, or other form of constraint or coercion."
(Emphasis added.)

104.   Pursuant to Fla. Stat. § 394.459(4), Harold Lorne Styer, Jr. had a right

to quality of treatment:

   (a)   Each patient shall receive services, including, for a patient placed under s. 394.4655, those services included in the court order which are suited to his or her needs, and which shall be administered skillfully, safely, and humanely with full respect for the patient's dignity and personal integrity. Each patient shall receive such medical, vocational, social, educational, and rehabilitative services as his or her condition requires in order to live successfully in the community. In order to achieve this goal, the department is directed to coordinate its mental health programs with all other programs of the department and other state agencies.

   (b)   Facilities shall develop and maintain, in a form accessible to and readily understandable by patients and consistent with rules adopted by the department, the following:

    1.   Criteria, procedures, and required staff training for any use of close or elevated levels of supervision, of restraint, seclusion, or isolation, or of emergency treatment orders, and for the use of bodily control and physical management techniques.

    2.   Procedures for documenting, monitoring, and requiring clinical review of all uses of the procedures described in subparagraph 1. and for documenting and requiring review of any incidents resulting in injury to patients.

    3.   A system for investigating, tracking, managing, and responding to complaints by persons receiving services or individuals acting on their behalf.

  (c)   A facility may not use seclusion or restraint for punishment, to compensate for inadequate staffing, or for the convenience of staff. Facilities shall ensure that all staff are made aware of these restrictions on the use of seclusion and restraint and shall make and maintain records which demonstrate that this information has been conveyed to individual staff members.

105.   Between on or about October 31, 2023, and November 3, 2023, Defendant NTBH intentionally and knowingly violated and abused the abovementioned rights and privileges of Harold Lorne Styer, Jr. guaranteed by Fla. Stat. § 394.459 by:

    a.  The false imprisonment of Harold Lorne Styer, Jr. in violation of Fla. Stat. § 394.459(1), Fla. Stat. § 394.459(4)(a), and Fla. Stat. § 394.459(4)(c).

106.   As a result of Defendant NTBH's violation of Harold Lorne Styer, Jr.'s rights under Fla. Stat. § 394.459, Harold Lorne Styer, Jr. has suffered damages to include monetary damages, physical injury, anger, anxiety, emotional distress, fear,

frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive restriction of liberty.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH as follows:

(a)    award Harold Lorne Styer, Jr. damages;
(b)    award Harold Lorne Styer, Jr. punitive damages
(c)    award Harold Lorne Styer, Jr. costs of this action; and
(d)    all other relief which this Court deems just and proper.

## COUNT III- ABUSE/NEGLECT OF VULNERABLE ADULT, FLA. STAT. § 415
## TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH.

107.    This is a cause of action pursuant to Fla. Stat. § 415 "Adult Protective Services" and specifically pursuant to Fla. Stat. § 415.1111.

108.    Harold Lorne Styer, Jr. is a "vulnerable adult" and Defendant NTBH is a "caregiver", as further defined by Florida Statute Chapter 415, and as further set forth above.

109.    Fla. Stat. § 415.102(16) defines "Neglect":

"Neglect" means the failure or omission on the part of the caregiver or vulnerable adult to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult, including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, which a prudent person would consider essential for the well-being of a vulnerable adult. The term "neglect" also means the failure of a caregiver or vulnerable adult to make a reasonable effort to protect a vulnerable adult from abuse, neglect, or exploitation by others. "Neglect" is repeated conduct or a single incident of carelessness which produces or could reasonably be expected to result in serious physical or psychological injury or a substantial risk of death.

110.    That with respect to Harold Lorne Styer, Jr., Defendant NTBH is culpable of "neglect" as defined under Fla. Stat. § 415.102(16) because Defendant NTBH's employee/agent, and within the course and scope of their employment did:

a.    Fail to provide the care, supervision, and services to Harold Lorne Styer, Jr. necessary to maintain his physical and mental health.

b.    Fail to make a reasonable effort to protect Harold Lorne Styer, Jr. from abuse and neglect at the hands of Defendant NTBH's employees.

c.    Engage in repeated conduct or a single incident of carelessness which produces or could reasonably be expected to result in serious physical or psychological injury or a substantial risk of death to Harold Lorne Styer, Jr.

111.    Fla. Stat. § 415.102(1) defines "Abuse":

"Abuse" means any willful act or threatened act by a relative, caregiver,

or household member which causes or is likely to cause significant impairment to a vulnerable adult's physical, mental, or emotional health. Abuse includes acts and omissions.

112.   That with respect to Harold Lorne Styer, Jr., Defendant NTBH is culpable of "abuse" as defined under Fla. Stat. § 415.102(1) because Defendant NTBH, the employees/agents of Defendant NTBH, and within the course and scope of their employment did the following which caused or was likely to cause significant impairment to Harold Lorne Styer, Jr.'s physical, mental, or emotional health:

> a. Failure to contact Harold Lorne Styer, Jr.'s medical treatment providers prior to adjusting or changing Harold Lorne Styer, Jr.'s prescribed medications.

113.   Defendant NTBH's failure to protect Harold Lorne Styer, Jr. from abuse, included but was not limited to the following failures and omissions:

> a. Failure to implement and/or maintain regular training of staff on complying with the involuntary procedures and criteria for the examination and execution of the involuntary placement of an individual under the criteria set forth in Florida's Baker Act.

> b. Failure to implement, maintain, and/or enforce comprehensive and specific policies and procedures for the prevention of unlawful and negligent involuntary placements of patients under the criteria for such involuntary placement set forth in the Florida Baker Act.

> c. Failure to have in place policies and procedures for the proper examination and involuntary placement of individuals under the criteria set forth under Florida Baker Act.

24

d.  Failure to develop clear guidelines and/or enforce said guidelines for the proper management and examination of individuals for involuntary placement under the criteria set forth the Florida Baker Act.

e.  Failure to implement, maintain and/or enforce programs, which develop and maintain organizational cultures which were safe, boundary, and respectful and knowledgeable about the issues of following the criteria set forth in Florida's Baker Act for the involuntary placement of individuals.

114.   As a direct and proximate result of Defendant NTBH's failure to properly and lawfully follow the procedures of the Florida Baker Act with respect to the involuntary placement of individuals, that Harold Lorne Styer, Jr. has suffered damages, including but not limited to, physical injury, past and future medical and psychiatric care, emotional pain and suffering, and such other damages as allowed by Florida law.

115.   Harold Lorne Styer, Jr. further reserves the right to seek leave of the Court to make a claim for entitlement to punitive damages, pursuant to Fla. Stat. § 415.1111, which expressly authorizes the recovery of "actual and punitive damages for any deprivation of or infringement on the rights of a vulnerable adult."

116.   Additionally, Harold Lorne Styer, Jr. is entitled to recover reasonable attorney fees and costs, as expressly authorized by Fla. Stat. § 415.1111, and/or as otherwise may be recoverable under Florida law.

117.   Pursuant to the express provision of Fla. Stat. § 415.1111, the remedies provided thereunder, "are in addition to and cumulative with other legal and

administrative remedies available to a vulnerable adult."

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH as follows:

(a)    award Harold Lorne Styer, Jr. actual damages pursuant to Fla. Stat. § 415.1111;

(b)    award Harold Lorne Styer, Jr. punitive damages pursuant to Fla. Stat. § 415.1111;

(c)    award Harold Lorne Styer, Jr. reasonable attorney's fees pursuant to Fla. Stat. § 415.1111;

(d)    award Harold Lorne Styer, Jr. costs of this action pursuant to Fla. Stat. § 415.1111; and

(e)    all other relief which this Court deems just and proper.

### COUNT IV – VIOLATION OF FCCPA, Fla. Stat. § 559.72(18) TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH.

118.    The LOR states in pertinent part:

"Please also be advised that we represent Harold Lorne Styer, Jr. with regard to any debt or alleged debt that may arise from Harold Lorne Styer, Jr.'s detainment at your facility. As such, please advise all practitioners and entities that work in your facility, are contracted by your facility, or send out bills to also cease all billing communications with my Client pursuant to 15 U.S.C. § 1692c(a)(2) and Fla. Stat. § 559.72(18).

119.   The alleged debt that Defendant NTBH attempted to collect is the monies alleged to be owed due for personal and household services, specifically, healthcare services that were provided to Plaintiff from October 31, 2023, through November 3, 2023. (hereinafter the "Debt").

120.   The alleged Debt which Defendant NTBH has attempted to collect from Plaintiff is a "debt" or "consumer debt" as defined in the FCCPA, because the alleged Debt was incurred primarily for personal, family, or household purposes and allegedly originated in Pasco County, Florida.  Fla. Stat. §559.55(1).

121.   Plaintiff is a "debtor" or "consumer" under the FCCPA because she is a natural person obligated or *allegedly* obligated to pay the Debt for household medical services for which she is financially responsible. Fla. Stat. § 559.55(2) (emphasis added).

122.   Defendant NTBH is a "debt collector" as defined in the FCCPA because it collects debt using telephones, the internet, and the United States mail system to send collection letters to persons within the state of Florida, all of which are instrumentalities of commerce. Fla. Stat. § 559.55(6).

123.   Defendant NTBH is a "debt collector" as defined in the FCCPA because it regularly collects or attempts to collect, directly or indirectly, debts owed or due. Fla. Stat. § 559.55(6).

124.   Defendant NTBH is a "debt collector" as defined in the FCCPA because at all times material it was attempting to collect an alleged consumer medical Debt.  Fla. Stat. § 559.55(6).

125.   Defendant NTBH is liable for the acts of its attorneys and agents if they send billing statements or text messages to Plaintiff.

126.   On August 20, 2024, Defendant NTBH sent a statement to Plaintiff with a balance of $195.00 (Exhibit B; "Collection Letter 1").

127.   On October 7, 2024, Frost-Arnett on behalf of Defendant NTBH sent a statement to Plaintiff in an attempt to collect the alleged Debt with a balance of $195.00. (Exhibit C; "Collection Letter 2").

128.   On March 27, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit D; "Collection Text 1").

129.   On April 1, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit E; "Collection Text 2").

130.   On Apil 23, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit F; "Collection Text 3").

131.   On Apil 28, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit G; "Collection Text 4").

132.   On May 2, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit H; "Collection Text 5").

133.   On May 5, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit I; "Collection Text 6").

134.   On May 12, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit J; "Collection Text 7").

135.   On May 16, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit K; "Collection Text 8").

136.   On May 22, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit L; "Collection Text 9").

137. On June 2, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit M; "Collection Text 10").

138. On June 20, 2025, Frost-Arnett on behalf of Defendant NTBH texted a statement to Plaintiff in an attempt to collect the alleged Debt. (Exhibit N; "Collection Text 11").

139. Defendant NTBH placed the Debt with Frost-Arnett to collect the alleged Debt, despite knowing Harold Lorne Styer, Jr. was represented by the Law Firm with respect to the alleged Debt.

140. The FCCPA, Fla. Stat. § 559.72(18) makes it unlawful for any person[2] to:

> Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

---

[2] "Florida courts have recognized that the FCCPA applies not only to debt collectors but also to any "person." *See Schauer v. Gen. Motors Acceptance Corp.*, 819 So.2d 809, 812 (Fla. 4th DCA 2002); *see also* § 559.72 (providing that "[i]n collecting consumer debts, no person shall ..."). This provision "includes all allegedly unlawful attempts at collecting consumer claims." *Schauer*, 819 So.2d at 812. Thus, the Fourth District determined that GMAC, the creditor, qualified as a person under the FCCPA and reversed the dismissal of the count against GMAC. *Id*. In doing so, the Schauer court noted that "[t]he Florida Act is different than its federal counterpart because it is not limited to debt collectors." Id. at 812 n. 1."" *Gann v. BAC Home Loans Servicing, LP*, 145 So.3d 906, 910 (Fla. 2nd DCA 2014).

141.   Defendant NTBH has violated the FCCPA, Fla. Stat. § 559.72(18) by causing Collection Letters 1 and 2 and Collection Texts 1 - 11 to be sent to Plaintiff when Defendant NTBH knew Plaintiff was represented by the Law Firm with respect to the alleged Debt.

142.   For purposes of the claims brought in this action, the applicable standard is the "least sophisticated" consumer test.  *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1172-75 (11th Cir. 1985); *see also* Fla. Stat. § 559.552 (the FCCPA looks to the FDCPA for guidance).

143.   Plaintiff has suffered actual damages as a result of the illegal collection communication by Defendant NTBH in the form of time lost, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH as follows:

(a)    award Harold Lorne Styer, Jr. actual damages, pursuant to Fla. Stat. § 559.77(2);

(b)    award Harold Lorne Styer, Jr. additional statutory damages of $1,000 for each violation of the FCCPA, pursuant to Fla. Stat. § 559.77(2);

(c)    award Harold Lorne Styer, Jr. punitive damages pursuant to Fla. Stat. § 559.77(2);

(d)    enjoining Defendant NTBH from further violations of the FCCPA pursuant to Fla. Stat. § 559.77(2);

31

(e)    award Harold Lorne Styer, Jr. costs of this action together with reasonable attorney's fees, pursuant to Fla. Stat. § 559.77(2);

(f)    prejudgment interest; and

(g)    all other relief which this Court deems just and proper.

## COUNT V – FALSE IMPRISONMENT
## TAMPA POLICE DEPARTMENT

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference.

144.    All conditions precedent of Florida Statutes Section 768.28 have been satisfied. Defendant City of Tampa Police Department was properly noticed of these claims pursuant to the requirements of Fla. Stat. § 768.28, including notice to the Florida Department of Financial Services, as required by said statute.  More than six months have passed from the date of filing of such notices and Defendant City of Tampa Police Department has not made final disposition of the claims.

145.    Harold Lorne Styer, Jr. was unlawfully detained under the Fla. Stat. 394(1) by The City of Zephyrhills Police Department on the information provided by TAMPA POLICE DEPARTMENT.

146.    Harold Lorne Styer, Jr. was then placed under the Baker Act and transported to NTBH.

147.    Harold Lorne Styer, Jr. did not have a mental illness under Fla. Stat. Fla. Stat. § 394.455(28) (2023).

148.   Law enforcement officers are charged with constructive knowledge of all the laws of the State of Florida.

149.   Harold Lorne Styer, Jr. had not committed a crime.

150.   Harold Lorne Styer, Jr. was not suspected of having committed a crime.

151.   Defendant City of Tampa Police Department contributed to the actions of Defendant NTBH and caused Harold Lorne Styer, Jr. to be restrained against Plaintiff's will.

152.   Defendant City of Tampa Police Department acted without legal authority in restraining Harold Lorne Styer, Jr. against Harold Lorne Styer, Jr.'s will.

153.   Harold Lorne Styer, Jr.'s restraint was unreasonable and unwarranted under the circumstances.

154.   Harold Lorne Styer, Jr. suffered damages, including but not limited to, mental anguish, humiliation, emotional pain and suffering, past and future medical and psychiatric care, loss of reputation, and such other damages as allowed by Florida law due to Plaintiff' One's false imprisonment.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, TAMPA POLICE DEPARTMENT as follows:

(a)    award Harold Lorne Styer, Jr. damages;
(b)    award Harold Lorne Styer, Jr. costs of this action; and
(c)    all other relief which this Court deems just and proper.

## COUNT VI– FALSE IMPRISONMENT
## ZEPHRYILLS POLICE DEPARTMENT

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, ZEPHRYILLS POLICE DEPARTMENT.

155.   All conditions precedent of Florida Statutes Section 768.28 have been satisfied. Defendant City of Zephyrhills Police Department was properly noticed of these claims pursuant to the requirements of Fla. Stat. § 768.28, including notice to the Florida Department of Financial Services, as required by said statute.  More than six months have passed from the date of filing of such notices and Defendant City of Zephyrhills Police Department has not made final disposition of the claims.

156.   Harold Lorne Styer, Jr. was unlawfully detained under the Fla. Stat. 394(1) by Defendant City of Zephyrhills Police Department.

157.   Harold Lorne Styer, Jr. was then placed under the Baker Act and transported to NTBH.

158.   Harold Lorne Styer, Jr. did not have a mental illness under Fla. Stat. Fla. Stat. § 394.455(28) (2023).

159.   Law enforcement officers are charged with constructive knowledge of all the laws of the State of Florida.

160.   Harold Lorne Styer, Jr. had not committed a crime.

161.   Harold Lorne Styer, Jr. was not suspected of having committed a crime.

162.   Defendant City of Zephyrhills Police Department contributed to the actions of Defendant NTBH and caused Plaintiff to be restrained against Harold Lorne Styer, Jr.'s will.

163.   Defendant City of Zephyrhills Police Department acted without legal authority in restraining Harold Lorne Styer, Jr. against Harold Lorne Styer, Jr.'s will.

164.   Harold Lorne Styer, Jr.'s restraint was unreasonable and unwarranted under the circumstances.

165.   Harold Lorne Styer, Jr. suffered damages, including but not limited to, mental anguish, humiliation, emotional pain and suffering, past and future medical and psychiatric care, loss of reputation, and such other damages as allowed by Florida law due to Harold Lorne Styer, Jr.'s false imprisonment.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, ZEPHRYILLS POLICE DEPARTMENT as follows:

(a)    award Harold Lorne Styer, Jr. damages;
(b)    award Harold Lorne Styer, Jr. costs of this action; and
(c)    all other relief which this Court deems just and proper.

## COUNT VII – VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 ZEPHRYILLS POLICE DEPARTMENT

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations

contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, ZEPHRYILLS POLICE DEPARTMENT.

166.   This is a civil action pursuant to 42 U.S.C. §1983 & §1988 seeking damages against Defendant, ZEPHRYILLS POLICE DEPARTMENT, for committing acts, under color of law, with the intent and for the purpose of depriving Harold Lorne Styer, Jr. of rights secured under the Constitution, laws of the United States, and laws of the State of Florida, and for refusing and/or neglecting to prevent such deprivations and denials to Harold Lorne Styer, Jr..

167.   Defendant, ZEPHRYILLS POLICE DEPARTMENT, who was a government actor, acting under the color of law, violated Harold Lorne Styer, Jr.'s constitutional right to be free from unreasonable seizure when it detained Harold Lorne Styer, Jr.  without probable cause.

168.   Defendant, ZEPHRYILLS POLICE DEPARTMENT's policy and custom is to use an outdated Report of Law Enforcement Initiating Involuntary Examination CF-MH 3052A.

169.   Defendant, ZEPHRYILLS POLICE DEPARTMENT's policy and custom is to not train its law enforcement officers that the statutory definition of "mental illness" under the Baker Act and Fla. Stat. § 394.455(29) does not include dementia.

170.   Defendant, ZEPHRYILLS POLICE DEPARTMENT, under color of state law deprived Harold Lorne Styer, Jr. his liberty rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, when it detained him without a warrant or any probable cause to believe Harold Lorne Styer, Jr. committed any crime.

171.   In depriving the Harold Lorne Styer, Jr. of these rights, Defendant, ZEPHRYILLS POLICE DEPARTMENT committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Harold Lorne Styer, Jr.'s human, safety, and property rights.

172.   An objectively reasonable police officer would have known that (a) seizing Harold Lorne Styer, Jr., (b) using force against Harold Lorne Styer, Jr., (c) restricting Harold Lorne Styer, Jr.'s movement, and (d) causing Harold Lorne Styer, Jr.'s continued detention, would violate clearly established law.

173.   The actions of Defendant, Officer Stephen violated clearly established constitutional rights of which a reasonable person would have known, that is, an objectively reasonable officer would have known that physically restraining a person without probable cause or legal authority pursuant to Fla. Stat. § 394.463(2)(a)2., violated clearly established state and federal law and violated the Fourth Amendment as a matter of law.

174.   Harold Lorne Styer, Jr.'s constitutional rights described hereinabove above were clearly established as a matter of law at the time the restraint and deprivation occurred.

175.   At that point, Defendant, Officer Stephen's actions did not meet the standard required for involuntary commitments under the Baker Act as required by Florida law, and he therefore lacked probable cause to detain Harold Lorne Styer, Jr. for said purpose.  *See Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021).

176.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

177.   As a direct and proximate result of the violation of Harold Lorne Styer, Jr.'s constitutional rights by Defendant, Officer Stephen, Harold Lorne Styer, Jr. has suffered damages, including but not limited to, extreme pain and suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, and will so suffer in the future. Harold Lorne Styer, Jr. has in the past and will in the future suffer lost wages and lost earning capacity. Plaintiff has in the past and will in the future be obligated to pay large sums of money for doctors' bills, hospital bills and other directly and indirectly related expenses in an effort to alleviate his suffering and cure his injuries. All of Harold Lorne Styer, Jr.'s

losses are either permanent or continuing in nature and the Harold Lorne Styer, Jr. will suffer these losses in the future.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, ZEPHRYILLS POLICE DEPARTMENT as follows:

(a)    award Harold Lorne Styer, Jr. damages;
(b)    award Harold Lorne Styer, Jr. reasonable attorneys' fees pursuant to 42 U.S.C. §1988;
(c)    award Harold Lorne Styer, Jr. costs of this action pursuant to 42 U.S.C. §1988;
(d)    award Harold Lorne Styer, Jr. punitive damages;
(e)    all other relief which this Court deems just and proper.

## COUNT VIII – VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 VICTORIA STEPHENS

Plaintiff, HAROLD LORNE STYER, JR. realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, VICTORIA STEPHENS.

178.   This is a civil action pursuant to 42 U.S.C. §1983 & §1988 seeking damages against Defendant, Officer Stephen, for committing acts, under color of law, with the intent and for the purpose of depriving Harold Lorne Styer, Jr. of rights secured under the Constitution, laws of the United States, and laws of the State of

Florida, and for refusing and/or neglecting to prevent such deprivations and denials to Harold Lorne Styer, Jr..

179.   Defendant, Officer Stephen, who was a government actor, acting under the color of law, violated Harold Lorne Styer, Jr.'s constitutional right to be free from unreasonable seizure when she detained Harold Lorne Styer, Jr.  without probable cause.

180.   Defendant, Officer Stephen, recklessly, maliciously, and under color of state law deprived Harold Lorne Styer, Jr. his liberty rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, when she detained him without a warrant or any probable cause to believe Harold Lorne Styer, Jr. committed any crime.

181.   In depriving the Harold Lorne Styer, Jr. of these rights, Defendant, Officer Stephen committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Harold Lorne Styer, Jr.'s human, safety, and property rights.

182.   Claims that a police officer used excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015), citing *Graham v. Connor*, 490 U.S. 386, 388 (1989).

183.   An objectively reasonable police officer would have known that (a)

seizing Harold Lorne Styer, Jr., (b) restricting Harold Lorne Styer, Jr.'s movement, and (c) causing Harold Lorne Styer, Jr.'s continued detention, would violate clearly established law.

184.   The actions of Defendant, Officer Stephen violated clearly established constitutional rights of which a reasonable person would have known, that is, an objectively reasonable officer would have known that physically restraining a person without probable cause or legal authority pursuant to Fla. Stat. § 394.463(2)(a)2., violated clearly established state and federal law and violated the Fourth Amendment as a matter of law.

185.   Harold Lorne Styer, Jr.'s constitutional rights described hereinabove above were clearly established as a matter of law at the time the restraint and deprivation occurred.

186.   At that point, Defendant, Officer Stephen's actions did not meet the standard required for involuntary commitments under the Baker Act as required by Florida law, and he therefore lacked probable cause to detain Harold Lorne Styer, Jr. for said purpose.  *See Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021).

187.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

188.    As a direct and proximate result of the violation of Harold Lorne Styer, Jr.'s constitutional rights by Defendant, Officer Stephen, Harold Lorne Styer, Jr. has suffered damages, including but not limited to, extreme pain and suffering, disability, physical impairment, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, and will so suffer in the future. Harold Lorne Styer, Jr. has in the past and will in the future suffer lost wages and lost earning capacity. Plaintiff has in the past and will in the future be obligated to pay large sums of money for doctors' bills, hospital bills and other directly and indirectly related expenses in an effort to alleviate his suffering and cure his injuries. All of Harold Lorne Styer, Jr.'s losses are either permanent or continuing in nature and the Harold Lorne Styer, Jr. will suffer these losses in the future.

**WHEREFORE**, Plaintiff, HAROLD LORNE STYER, JR. respectfully requests that this Court enter judgment against Defendant, VICTORIA STEPHENS as follows:

(a)    award Harold Lorne Styer, Jr. damages;
(b)    award Harold Lorne Styer, Jr. reasonable attorneys' fees pursuant to 42 U.S.C. §1988;
(c)    award Harold Lorne Styer, Jr. costs of this action pursuant to 42 U.S.C. §1988;
(d)    award Harold Lorne Styer, Jr. punitive damages;
(e)    all other relief which this Court deems just and proper.

## COUNT IX - LOSS OF CONSORTIUM
## TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH

Plaintiff, JOANN STYER, realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH.

189.   At all material times, Joann Styer was the lawful spouse of Harold Lorne Styer, Jr., and had been continuously married to him for over fifty-seven (57) years prior to the events described in this Complaint.

190.   As a direct and proximate result of the unlawful, involuntary, and prolonged detention of Harold Lorne Styer, Jr. by Defendant NTBH, Joann Styer was deprived of the love, care, comfort, companionship, society, and services of Harold Lorne Styer, Jr.

191.   The forced separation caused by Defendant NTBH's actions occurred without legal justification, without proper medical evaluation, and without adequate explanation to Joann Styer, who was present at the time of Harold Lorne Styer, Jr.'s removal and was treated with dismissiveness and disregard by facility staff.

192.   During Harold Lorne Styer, Jr.'s confinement, Joann Styer was denied meaningful contact with her husband Harold Lorne Styer, Jr., and her efforts to advocate for her husband Harold Lorne Styer, Jr.'s release, communicate with medical staff, or understand the basis for his detention were ignored or obstructed.

193.   Joann Styer was left in a state of fear, anxiety, and helplessness as to Harold Lorne Styer, Jr.'s condition and whereabouts.

194.   This separation disrupted the long-standing emotional, physical, and practical bond between Harold Lorne Styer, Jr. and Joann Styer.

195.   Joann Styer and Harold Lorne Styer, Jr. were each other's primary source of companionship and support, particularly given their age and health conditions.

196.   Their daily routines, shared decision-making, and mutual caregiving were deeply impacted by Defendant NTBH's conduct.

197.   In addition to the emotional anguish caused by the wrongful detention, Joann Styer experienced distress and hardship related to post-discharge consequences, including an alleged Debt of $195.00 stemming from the unlawful Baker Act confinement.

198.   Defendant NTBH's conduct exacerbated Harold Lorne Styer, Jr.'s cognitive vulnerabilities, imposed significant psychological strain on Joann Styer, and directly interfered with her ability to fulfill her role as a loving spouse, caregiver, and advocate.

199.   As a result of Defendant NTBH's actions, Joann Styer suffered mental anguish, emotional distress, and a substantial loss of consortium, including but not limited to the loss of Harold Lorne Styer, Jr.'s affection, companionship, assistance,

emotional support, and household services, in violation of her marital rights under Florida law.

**WHEREFORE**, Plaintiff, JOANN STYER respectfully requests that this Court enter judgment against Defendant, TEN BROECK TAMPA, LLC, d/b/a NORTH TAMPA BEHAVIORAL HEALTH as follows:

    (a)    award Joann Styer damages;
    (b)    award Joann Styer punitive damages
    (c)    award Joann Styer costs of this action; and
    (d)    all other relief which this Court deems just and proper.

### COUNT X - LOSS OF CONSORTIUM
### TAMPA POLICE DEPARTMENT

Plaintiff, JOANN STYER, realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference.

200.  At all material times, Joann Styer was the lawful spouse of Harold Lorne Styer, Jr., and had been continuously married to him for over fifty-seven (57) years prior to the events described in this Complaint.

201.  As a direct and proximate result of the information Defendant TPD provided to Defendant ZPD that led to the unlawful, involuntary, and prolonged detention of Harold Lorne Styer, Jr. by Defendant ZPD and Defendant NTBH, Joann Styer was deprived of the love, care, comfort, companionship, society, and services of Harold Lorne Styer, Jr.

202. The forced separation caused by Defendant TPD and Defendant ZPD that led to Defendant NTBH's actions occurred without legal justification, without proper medical evaluation, and without adequate explanation to Joann Styer, who was present at the time of Harold Lorne Styer, Jr.'s removal and was treated with dismissiveness and disregard by facility staff.

203. During Harold Lorne Styer, Jr.'s confinement, Joann Styer was denied meaningful contact with Harold Lorne Styer, Jr., and her efforts to advocate for Harold Lorne Styer, Jr.'s release, communicate with medical staff, or understand the basis for his detention were ignored or obstructed.

204. Joann Styer was left in a state of fear, anxiety, and helplessness as to Harold Lorne Styer, Jr.'s condition and whereabouts.

205. This separation disrupted the long-standing emotional, physical, and practical bond between Harold Lorne Styer, Jr. and Joann Styer.

206. Joann Styer and Harold Lorne Styer, Jr. were each other's primary source of companionship and support, particularly given their age and health conditions.

207. Their daily routines, shared decision-making, and mutual caregiving were deeply impacted by the actions of Defendant TPD's communications to Defendant ZPD which led to Defendant NTBH's conduct.

208.   In addition to the emotional anguish caused by the wrongful detention, Joann Styer experienced distress and hardship related to post-discharge consequences, including an alleged Debt of $195.00 stemming from the unlawful Baker Act confinement.

209.   Defendant TPD's communications to Defendant ZPD which led to Defendant NTBH's conduct that exacerbated Harold Lorne Styer, Jr.'s cognitive vulnerabilities, imposed significant psychological strain on Joann Styer, and directly interfered with her ability to fulfill her role as a loving spouse, caregiver, and advocate.

210.   Defendant TPD's communications to Defendant ZPD which led to Defendant NTBH's actions which caused Joann Styer to suffer mental anguish, emotional distress, and a substantial loss of consortium, including but not limited to the loss of Harold Lorne Styer, Jr.'s affection, companionship, assistance, emotional support, and household services, in violation of her marital rights under Florida law.

**WHEREFORE**, Plaintiff, JOANN STYER respectfully requests that this Court enter judgment against Defendant, TAMPA POLICE DEPARTMENT as follows:

(a)    award Joann Styer damages;
(b)    award Joann Styer costs of this action; and
(c)    all other relief which this Court deems just and proper.

## COUNT XI - LOSS OF CONSORTIUM
## ZEPHRYILLS POLICE DEPARTMENT

Plaintiff, JOANN STYER, realleges those allegations contained within paragraphs 1-90 above and incorporates them herein by this reference.

211.    At all material times, Joann Styer was the lawful spouse of Harold Lorne Styer, Jr., and had been continuously married to him for over fifty-seven (57) years prior to the events described in this Complaint.

212.    As a direct and proximate result of the unlawful, involuntary, and prolonged detention of Harold Lorne Styer, Jr. by Defendant ZPD and Defendant NTBH, Joann Styer was deprived of the love, care, comfort, companionship, society, and services of Harold Lorne Styer, Jr.

213.    The forced separation caused by Defendant ZPD and Defendant NTBH's actions occurred without legal justification, without proper medical evaluation, and without adequate explanation to Joann Styer, who was present at the time of Harold Lorne Styer, Jr.'s removal and was treated with dismissiveness and disregard by facility staff.

214.    During Harold Lorne Styer, Jr.'s confinement, Joann Styer was denied meaningful contact with her Harold Lorne Styer, Jr., and her efforts to advocate for Harold Lorne Styer, Jr.'s release, communicate with medical staff, or understand the basis for his detention were ignored or obstructed.  Joann Styer was left in a

state of fear, anxiety, and helplessness as to her husband, Harold Lorne Styer, Jr.'s condition and whereabouts.

215.   This separation disrupted the long-standing emotional, physical, and practical bond between Harold Lorne Styer, Jr. and Joann Styer. Joann Styer and Harold Lorne Styer, Jr. were each other's primary source of companionship and support, particularly given their age and health conditions. Their daily routines, shared decision-making, and mutual caregiving were deeply impacted by the actions of Defendant ZPD which led to Defendant NTBH's conduct.

216.   In addition to the emotional anguish caused by the wrongful detention, Joann Styer experienced distress and hardship related to post-discharge consequences, including a debt of $195.00 now in collections with Frost-Arnett, stemming from the unlawful Baker Act confinement.

217.   Defendant ZPD's unlawful detainment and initiation of the Baker Act of Harold Lorne Styer, Jr. which led to Defendant NTBH's conduct that exacerbated Harold Lorne Styer, Jr.'s cognitive vulnerabilities, imposed significant psychological strain on Joann Styer, and directly interfered with her ability to fulfill her role as a loving spouse, caregiver, and advocate.

218.   Defendant ZPD's unlawful detainment and initiation of the Baker Act of Harold Lorne Styer, Jr. led to Defendant NTBH's actions which caused Joann Styer to suffer mental anguish, emotional distress, and a substantial loss of

consortium, including but not limited to the loss of Harold Lorne Styer, Jr.'s affection, companionship, assistance, emotional support, and household services, in violation of her marital rights under Florida law.

**WHEREFORE**, Plaintiff, JOANN STYER respectfully requests that this Court enter judgment against Defendant, ZEPHRYILLS POLICE DEPARTMENT as follows:

(a)    award Joann Styer damages;
(b)    award Joann Styer costs of this action; and
(c)    all other relief which this Court deems just and proper.

<u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted October 30, 2025.

**THOELE|DRACH**

BY:

_____
**Justin Seth Drach, Esq.**
Florida Bar No. 103016
Email: justin@thoeledrach.com
**Amanda Marie Thoele, Esq.**
Florida Bar No. 75118
Email: amanda@thoeledrach.com
3744 Dupont Station Court S
Jacksonville, FL 32217
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiffs*